**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CHRIS KALB, individually and on behalf of        )
all others similarly situated,                              )
                                                                       )
                                             Plaintiff,           )
                                                                       )          Case No.  22-cv-229
                               v.                                  )
                                                                       )          Removed from the Circuit Court
GARDA CL GREAT LAKES, INC.,              )          of Cook County, Illinois, Chancery
                                                                       )          Division, No. 2021-CH-00835
                                           Defendant.         )

## NOTICE OF REMOVAL

Defendant Garda CL Great Lakes, Inc. ("Garda") hereby removes this action from the Circuit Court of Cook County, Illinois, Chancery Division, to this Court. In support of its Notice of Removal, Garda states as follows:

## I.        INTRODUCTION AND BACKGROUND

1.        Garda files this Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1332(d) (or, in the alternative, 28 U.S.C. § 1332(a)), 1441 and 1446. Garda has not been served in this case, but received a copy of the First Amended Class Action Complaint and an Alias Summons addressed to a different entity that is not a defendant in this case on December 20, 2021. This Notice of Removal is being timely filed with this Court, as provided by 28 U.S.C. § 1446(b).

2.        Plaintiff Chris Kalb ("Plaintiff") commenced this action against Garda in the Circuit Court of Cook County, Illinois, Chancery Division, by filing an initial Class Action Complaint, styled *Chris Kalb, individually and on behalf of all others similarly situated vs. Garda Great Lakes, Inc.,* Case No. 2021-CH-00835, on February 22, 2021, and a First Amended Class Action Complaint ("First Amended Complaint" or "FAC") was filed on June 22, 2021, according to the docket in the state court case.

3.      Because this action was brought in the Circuit Court of Cook County, Illinois, venue for purposes of removal is proper in this Court under 28 U.S.C. § 93(a). *See* 28 U.S.C. § 93(a); 28 U.S.C. § 1441(a).

4.      Pursuant to 28 U.S.C. § 1446(a), a copy of the First Amended Complaint and the Alias Summons that were received by Garda but were not served on it in the state court case are attached as Exhibit A.

5.      Plaintiff alleges he was employed by Garda in Illinois for some unspecified time. Ex. A, FAC ¶ 1. As shown in the declaration of Eva Parisi, Employee Relations Manager of Garda's Bloomington, Illinois facility, attached hereto, Plaintiff was employed by Garda from December 14, 2017 to December 14, 2018. See Exhibit B, ¶ 8.

6.      Plaintiff's First Amended Complaint purports to assert claims against Garda under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). Plaintiff alleges that Garda violated BIPA's mandates concerning collection, storage, and use of his biometric information – specifically, his fingerprints, when he clocked in or out at one of its time clocks. Ex. A, Compl. ¶¶ 14, 15, 18, 19, 33-44, 57-60, 82, 83, 91-93, 101, 102. Plaintiff seeks statutory damages of $1,000 for each and every violation or $5,000 for each and every intentional or reckless violation on his behalf based on these claims. *Id.* ¶¶ 84, 94, 103, and p. 18, Prayer for Relief (D).

7.      Plaintiff's First Amended Complaint also asserts claims on behalf of a proposed class of individuals consisting of "[a]ll persons who were enrolled in the biometric timekeeping system and subsequently used a biometric timeclock while employed/working for Defendant in Illinois during the applicable statutory period." Ex. A, FAC ¶ 71. As to the size of the proposed class, Plaintiff alleges "there are in excess of forty potential class members." *Id.* ¶ 72. Plaintiff seeks statutory damages of $1,000 for each and every violation or $5,000 for each and every

intentional or reckless violation on behalf of the proposed class identified in his First Amended Complaint. *Id.* ¶¶ 84, 94, 103, and p. 18, Prayer for Relief (D).

### A.    Kalb's Prior BIPA Lawsuit Against Garda

8.     Apparently unbeknownst to Kalb's current counsel, Kalb had also simultaneously retained a different law firm to file a substantially identical BIPA class action in the Circuit Court of McLean County, Illinois. *Kalb v. GardaWorld CashLink, LLC*, No. 21 L 0000014 (filed Jan. 26, 2021) ("Kalb I").[1] Kalb's counsel in that case was Frank Hedin and Arun Ravindran of Hedin Hall LLP, with Carl Malmstrom of Wolf, Haldenstein, Adler, Freeman & Herz as local counsel.

9.     Garda removed Kalb I to the United States District Court for the Central District of Illinois, No. 1:21-cv-01092, on the same grounds as in the present case.

10.     Garda moved to dismiss Kalb I on the principal ground that Kalb's claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). Kalb admitted he had no response to the LMRA preemption argument and did not file a response to the motion to dismiss. After filing an unsuccessful motion to sever and remand one of his claims, Kalb voluntarily dismissed Kalb I without prejudice. Dkt. 14 in No. 1:21-cv-01092 (June 14, 2021).

## II.    GROUNDS FOR REMOVAL

### A.    Because Plaintiff's Claims Are Preempted By The LMRA, This Court Has Federal-Question Jurisdiction (28 U.S.C. § 1331).

11.     This Court has original jurisdiction over this action because the Plaintiff's sought-after relief is preempted by Section 301 of the LMRA.

---

[1] Garda CL Great Lakes Inc. informed Kalb in Kalb I, that Garda CL Great Lakes, not GardaWorld CashLink, was his employer.

12.    Though typically a court must examine the plaintiff's well-pleaded complaint to see if it raises an issue of federal law, the "complete preemption" doctrine provides that when Congress completely preempts a particular area of law, any complaint raising claims in that area will be considered federal in character. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987) ("One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years, this Court has singled out claims pre-empted by § 301 of the LMRA for such special treatment."); *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392–93 (1987); *Douglas v. American Info. Technologies Corp.,* 877 F.2d 565, 569 (7th Cir. 1989).

13.    Here, "Section 301 of the LMRA, which provides that suits for violation of contracts between an employer and a labor organization confer original jurisdiction in federal district courts, has complete preemption force." *Atchley v. Heritage Cable Vision Associates,* 101 F.3d 495, 498 (7th Cir. 1996); 29 U.S.C. § 185(a). If the resolution of a state-law claim is dependent upon an interpretation of a collective bargaining agreement, the state-law claim will be preempted by Section 301 of the LMRA. *See Baker v. Kingsley,* 387 F.3d 649, 657 (7th Cir. 2004).

14.    The Seventh Circuit has held that BIPA claims, just like Plaintiff's claims here, are removable on the basis of federal-question jurisdiction. *See Miller v. Sw. Airlines Co.,* 926 F.3d 898, 903-05 (7th Cir. 2019) (holding, in the Railway Labor Act context but acknowledging application of the principle in the LMRA context, that "if a dispute necessarily entails the interpretation or administration of a collective bargaining agreement, there's no room for individual employees to sue under state law"). According to the Seventh Circuit in *Miller,* "there can be no doubt that how workers clock in and out is a proper subject of negotiation between

4

unions and employers," such that the question of whether these unions "consent[ed] to the collection and use of biometric data, or perhaps grant authority through a management-rights clause" and whether the employer "may use third parties to implement timekeeping and identification systems, are topics for bargaining between unions and management." *Id.* at 903. In other words, states simply "cannot bypass the mechanisms" of union bargaining to authorize direct negotiation or litigation between workers and management. *Id.* at 904. Following its holding in *Miller,* the Seventh Circuit expressly held that federal preemption of BIPA claims is not limited to the Railway Labor Act context, but applies to all disputes requiring application or interpretation of a collective bargaining agreement. *See Fernandez v. Kerry, Inc.,* 14 F.4th 644, 646 (7th Cir. 2021) ("If labor and management want to bargain collectively about particular working conditions [*e.g.,* clocking in and out], they are free to do so. Workers cannot insist that management bypass the union and deal with them directly about these subjects. After all, the [LMRA] says that a certified union is each worker's exclusive representative on collective issues.")

15.     Plaintiff alleges that Garda violated BIPA by failing to institute, maintain, and adhere to a publicly available retention schedule and guidelines for permanent deletion of his biometric data; failing to obtained informed written consent and release before obtaining his biometric identifiers or information; and disclosing his biometric identifiers and information before obtaining consent. Ex. A, FCA ¶¶ 76-83, 85-93, 95-102. But the terms and conditions of Plaintiff's employment were governed by a collective bargaining agreement between Garda and Plaintiff's collective bargaining representative effective August 1, 2011 through March 22, 2018 (the "2011 CBA") and a collective bargaining agreement effective March 23, 2018 through the end of Plaintiff's employment and beyond (the "2018 CBA"). Ex. B, Parisi Decl. ¶¶ 4-6 and Exs. 1 (2011 CBA) and 2 (2018 CBA) thereto. The 2011 and 2018 CBAs contain collectively bargained

provisions that govern management rights with respect to the processes, equipment, and operations of Garda (*see* Ex. 1 to Ex. B, Art. 25 and Ex. 2 to Ex. B, Art. 23) and specifically address use of the time clock (Ex. 1 to Ex. B, Art. 6(g) and Ex. 2 to Ex. B, Art. 6, §2). In addition, the CBAs contain a grievance procedure applicable to disputes arising in connection with the application, interpretation, or alleged violation of any provision of the CBA. Ex. 1 to Ex. B, Art. 5 and Ex. 2 to Ex. B, Art. 25.  If the grievance procedure does not resolve the dispute, the dispute must be submitted to arbitration. *Id*. Although the 2021 CBA governing terms and conditions of employment at the Bloomington branch (Ex. 4 to Ex. B) is not applicable to Kalb because his employment with Garda ended in 2018, the 2021 CBA also contains a broad management rights clause (*see* Ex. 4 to Ex. B, Art. 23), a grievance and arbitration requirement (*id.* Art. 25) and other provisions supporting LMRA preemption of claims arising in or after 2021.

16.     Under *Fernandez* and *Miller,* resolving the issue of whether consent and notice have properly been given under BIPA necessarily requires analysis of the interpretation and administration of the Management Rights clause and other clauses of the CBAs. *See Fernandez,* 14 F.4th at 646, *Miller,* 926 F.3d at 903-04. In other words, the Court cannot analyze Plaintiff's claims without examining the CBAs' language concerning Garda's rights to determine methods, procedures, and equipment, and to determine the nature of work to be performed by the employees and to implement rules and regulations. *See Fernandez* and *Miller, supra.* Similarly, the analysis of whether Garda obtained any required releases or consents, provided notices, or otherwise violated BIPA with respect to timekeeping practices, requires a determination of whether the CBAs' specifications of Garda's right to manage and direct its workforce and determine the methods, procedures, equipment, and rules to be utilized by the employees and other provisions of the CBAs constitute a sufficient written notice and release from Plaintiff's "legally authorized

6

representative" under 740 ILCS § 14/15(b) (providing for "legally authorized representative" to receive notices and provide consent on behalf of an individual to collection, storage and use of biometric information). *See Fernandez* and *Miller, supra.* A union is a legally authorized representative for this purpose. *Miller,* 926 F.3d at 903. Whether the union

> *did* consent to the collection and use of biometric data, or perhaps grant authority through a management-rights clause, is a question for an [arbitrator]. Similarly, the retention and destruction schedules for biometric data, and whether [employers] may use third parties to implement timekeeping and identification systems, are topics for bargaining between unions and management. States cannot bypass the mechanisms of the [LMRA] and authorize direct negotiation or litigation between workers and management.

*Miller,* 926 F.3d at 903-04 (emphasis in original).

As a result, Plaintiff's claims under BIPA are preempted by the LMRA, so this Court has federal-question jurisdiction over this case and removal is proper under 28 U.S.C. § 1331.

**B.    In The Alternative, This Case Meets All The Requirements For Jurisdiction Under CAFA (28 U.S.C. § 1332(d)(2)), Or, Alternatively, 28 U.S.C. § 1332(a).**

17.    This Court also has original jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), which grants to the United States District Courts original jurisdiction over "any civil action" in which the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs" and is a "class action" in which, among other things, "any member of a class of plaintiffs is a citizen of a State different from any defendant." *See* 28 U.S.C. § 1332(d)(2). In the alternative, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), which grants to the United States District Courts original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States[.]" *See* 28 U.S.C. § 1332(a).

18.     This case meets all the requirements for jurisdiction under CAFA. The amount in controversy exceeds $5,000,000 and at least one member of the proposed class of plaintiffs is a citizen of a state different from Garda. *See* 28 U.S.C. § 1332(d)(2). Additionally, the number of members of the proposed plaintiff class is greater than 100. Ex. B Parisi Decl. ¶ 9 (several hundred employees used the alleged time keeping system). *See* 28 U.S.C. § 1332(d)(5)(B). Alternatively, this case also meets all the requirements for diversity jurisdiction under § 1332(a). The amount in controversy exceeds $75,000, Plaintiff and Garda are citizens of different states, and Garda is not a citizen of Illinois.

### 1.     Amount In Controversy

19.     There need be only "a reasonable probability that the stakes exceed" $75,000 to satisfy the amount in controversy requirement under § 1332(a) or the $5,000,000 amount in controversy requirement under CAFA in order to satisfy the amount in controversy requirement. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). The Seventh Circuit has recognized "the difficulty a defendant faces when the plaintiffs, who control the allegations of the complaint, do not want to be in federal court and provide little information about the value of their claims." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011). As such, "the party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Id*. (citing *Brill*, 427 F.3d at 448). This burden "is a pleading requirement, not a demand for proof." *Id*. (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)). Specifically in the BIPA context, a complaint seeking damages for "each" violation "can plausibly be read to suggest that a violation of at least some of the BIPA provisions alleged occurred every time" there was a scan of the plaintiff's biometric data. *Peatry, supra,* 393 F. Supp. 3d at 769. The law on this issue is sufficiently unsettled that the Seventh Circuit recently

certified to the Illinois Supreme Court the question of whether an entity violates BIPA only when it first collects an individual's biometric information or whether a violation occurs each time an entity collects or discloses the biometric data in violation of BIPA. *Cothron v. White Castle Sys., Inc.,* No. 20-3202, 2021 WL 5998537 (7th Cir. Dec. 20, 2021). Accordingly, at this stage, recovery on a per-punch basis, although uncertain, remains plausible for purposes of determining the amount of the claim.

20.     Plaintiff's First Amended Complaint seeks damages on behalf of Plaintiff during his employment with Garda, and on behalf of a proposed class of current and former employees in Illinois "during the applicable statutory period." Ex. A, FAC ¶¶ 1, 72, 84, 94, 103. While Garda denies any liability of any kind in this action, the proposed class, as defined by Plaintiff in his First Amended Complaint, would consist of several hundred current and former employees who are or were working for the company in Illinois. Ex. B Parisi Decl. ¶ 9. While the First Amended Complaint does not specify a damages figure, it is apparent that the aggregated claims of the putative class plausibly exceed CAFA's jurisdictional minimum. In addition, it is plausible that Plaintiff's claim, by itself, exceeds the individual $75,000 threshold. *See* 28 U.S.C. § 1332(d)(2).

21.     Inasmuch as the Complaint seeks " statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2)," or "statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1)" (Ex. A, FAC ¶¶ 84, 94, 103, and p. 18, Prayer for Relief (D)), it is plausible that Plaintiff seeks to recover $5,000 in damages for each time, over the course of one year of employment, that he was "required to 'clock-in' and 'clock-out' using a timeclock that operated, at least in part, by scanning [his] fingerprint." Ex. A, FAC ¶ 33. Accordingly, based on the First Amended Complaint's allegations, if Plaintiff clocked

in or out using the alleged fingerprint scanning process a mere 16 times during his employment, it is plausible that he seeks to recover damages in excess of $75,000 (16 x $5,000=$80,000).

22.     Applying this same damages theory to the putative class would well exceed the jurisdictional threshold under CAFA. Plaintiff alleges that each class member is entitled to recover up to $5,000 individually for each time he or she clocked in or out using the fingerprint scanning process. Ex. A, FAC ¶¶ 84, 94, 103, and p. 18, Prayer for Relief (D). Even assuming there are only 200 class members (Parisi's declaration shows there were well over 200), an average of just 6 fingerprint scans each would put the class claim over $5,000,000 in the aggregate (6 x $5,000 x 200=$6,000,000), thus satisfying the CAFA amount in controversy requirement.

23.     Additionally, Plaintiff seeks "injunctive and other equitable relief as is necessary to protect the interests Plaintiff and the Class[.]" Ex. A, FAC ¶¶ 84, 94, 103, and p. 18, Prayer for Relief (D). Garda disputes that it has violated BIPA and that any injunctive relief is appropriate. However, strictly for removal purposes and based on Plaintiff's allegations, the costs of Plaintiff's individual claim for injunctive relief itself could exceed $75,000. "[T]he cost a defendant incurs in complying with injunctive relief is a legitimate consideration in a jurisdiction inquiry." *Tropp v. W.-S. Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004) (holding diversity jurisdiction exists where "the costs of implementing the injunctive relief requested by [plaintiff] in the original complaint would exceed $75,000").

### 2.     Diversity Of Citizenship

24.     Plaintiff is a citizen and resident of Illinois. Ex. A, FAC ¶¶ 1, 4.

25.     Garda CL Great Lakes, Inc. is an Ohio corporation headquartered in Boca Raton, Florida, with its principal place of business in Boca Raton, Florida. Decl. of Jeffrey Schiavino,

Controller of Garda USA, Inc. (attached hereto as Exhibit C) ¶ 3. Garda is thus a citizen of Ohio and Florida.

26. Plaintiff seeks to certify a class. Plaintiff himself is a class member and as noted is an Illinois citizen. It is likely that the majority of proposed class members, who consist of current and former employees of Garda in Illinois, are also Illinois citizens or at least are not citizens of Ohio or Florida, the states where Garda is a citizen. *Id*., at ¶ 2.

27. Diversity jurisdiction therefore exists in this action pursuant to 28 U.S.C. § 1332(a) and (d)(2).

### 3. Size Of Proposed Class

28. The proposed class, which Plaintiff alleges consists of "[a]ll persons who were enrolled in the biometric timekeeping system and subsequently used a biometric timeclock while employed/working for Defendant in Illinois during the applicable statutory period," Ex. A, FAC ¶ 71, exceeds 100 members as required by CAFA. Ex. B Parisi Decl. ¶ 9. *See* 28 U.S.C. § 1332(d)(5)(b).

## III. CONCLUSION

29. 25. Based upon the foregoing, all requirements for removal to this Court on the basis of federal question jurisdiction, CAFA, and complete diversity jurisdiction have been met. By this Notice of Removal, Garda does not waive any objections it may have to service of process, jurisdiction or venue, or any other defenses or objections it may have to this action. Garda intends no admissions of fact, law or liability by this Notice, and expressly reserves all defenses, motions and pleas.

WHEREFORE, Defendant Garda CL Great Lakes, Inc. hereby removes this action to this Court.

Dated: January 14, 2022          Respectfully submitted,

GARDA CL GREAT LAKES, INC.,
Defendant,

By:     /s/ Mark L. Shapiro
            One of Its Attorneys

Mark L. Shapiro (ARDC #2566753)
Phillip M. Schreiber (ARDC #209973)
Kelly D. DeWitt (ARDC #6272902)
Holland & Knight LLP
150 N. Riverside Plaza, Ste. 2700
Chicago, Illinois 60606
312-263-3600
312-578-6666 (facsimile)
mark.shapiro@hklaw.com
phillip.schreiber@hklaw.com
kelly.dewitt@hklaw.com

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that January 14, 2022, a true copy of the foregoing Notice of Removal was served via electronic mail on the following counsel of record:

> Brandon M. Wise
> Paul A. Lesko
> Adam Florek
> Peiffer Wolf Carr Kane & Conway, LLP
> 818 Lafayette Ave, Floor 2
> St. Louis, MO 63104
> bwise@peifferwolf.com
> plesko@peifferwolf.com
> aflorek@peifferwolf.com
>
> *Attorneys for Plaintiff*

/s/ Mark L. Shapiro

13